RUSSELL R. GANNON CO., Inc.

v.

The UNITED STATES.

No. 206–63.

United States Court of Claims.

Nov. 14, 1969.

Robert D. Wallick, Washington, D. C., attorney of record, for plaintiff. Steptoe & Johnson, Washington, D. C., of counsel.

Thomas W. Petersen, with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57(a) [since September 1, 1969, Rule 134 (h)]. The commissioner has done so in an opinion and report filed on September 11, 1968. Exceptions to the commissioner's opinion, findings and recommended conclusion of law were filed by defendant. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth,

it hereby adopts the same as the basis for its judgment in this case.* Therefore, plaintiff is entitled to recover on the third count of the petition and judgment is entered for plaintiff in the sum of $5,000.

## OPINION OF COMMISSIONER

WHITE, *Commissioner:*

The petition, as originally filed, set out in separate counts six different claims allegedly arising in connection with the performance by the plaintiff during 1958 and 1959 of a contract (No. DA 11–184–ENG–16458) under which the plaintiff produced 231 dehumidifiers for the defendant.

The work under the contract was performed by the plaintiff at a plant located in Cincinnati, Ohio.

On March 11, 1968, the court dismissed counts 1, 2, 4, 5, and 6 of the petition because of the plaintiff's failure to prosecute those claims. Thus, only the third count of the petition remains in the case for disposition by the court.

In the third count of the petition, the plaintiff alleges that the defendant breached the contract by failing to provide adequate inspection services in connection with the perfromance of a 40-hour operational test which each dehumidifier was required to undergo after being completed and prior to shipment; and that this caused the plaintiff to sustain damages in the amount of $7,784.58 because the plaintiff (a) "was seriously delayed in meeting its production schedule," and (b) "was required to provide inspectors to record the test data * * *."

The contract specifications required that each dehumidifier, after the completion of the manufacturing process and prior to shipment, be operated continuously for a period of 40 hours, and that the various components operate satisfactorily during the test, without any undue heating of the bearings.

The 40-hour operational test on a completed dehumidifer was conducted by the plaintiff's inspectors, who examined the machine at regular intervals during the test, checked the various components to see whether they were operating correctly and meeting the requirements of the test, and maintained a log in which the observations of the inspectors were recorded.

The shipment of dehumidifiers by the plaintiff under the contract was begun on November 21, 1958 and continued through March 26, 1959. During the greater part of this period, or until about about February 9, 1959, the defendant directed the plaintiff not to begin the 40-hour operational test on a dehumidifier, or attach the unit to an electrical outlet for the beginning of such test, unless a Government inspector was present to inspect the unit, approve it for testing, and witness the beginning of the operational test. The inspection of a unit by the Government inspector at this stage required from an hour to an hour and a half. The requirement with respect to a pre-test inspection was waived by the defendant on and after about February 9, 1959.

Also, the defendant directed the plaintiff not to conclude the 40-hour operational test of a dehumidifier unless a Government inspector was present to witness the end of the test and to check the log maintained by the plaintiff's inspectors during the course of the test.

The validity of the directives mentioned in the two immediately preceding paragraphs is not questioned by the plaintiff.

As the defendant believed that the extent of the inspection services to be performed by Government personnel during the course of the work under the contract was not sufficient to justify the assignment of a Government inspector to the plaintiff's plant on a full-time basis, the defendant informed the plaintiff, at about, the time when the contract was

---

* The concurring opinion of Davis, Judge, follows the opinion of the trial commis-sioner which has been adopted by the court.

awarded to the plaintiff, that inspection services for the defendant under the contract would be performed by an itinerant inspector on an on-call basis. The defendant further instructed the plaintiff in this connection that it would be necessary for the plaintiff, whenever it was anticipated that the services of a Government inspector would be needed in connection with the performance of the work under the contract, to give 72 hours' advance notice of such prospective need to an inspection office which the defendant maintained in Cincinnati.

The evidence indicates that, throughout the performance of the work under the contract, the defendant never failed to provide a Government inspector to the plaintiff within 72 hours after receiving a request from the plaintiff for such inspection services. Furthermore, the defendant at times sent an inspector to the plaintiff's plant the next day after receiving a request from the plaintiff; and the defendant occasionally sent an inspector to the plaintiff's plant in the afternoon after receiving a request from the plaintiff in the morning.

On the other hand, although the defendant did not always insist upon a 72-hour time interval between the receipt of a request from the plaintiff for inspection services and the furnishing of a Government inspector, the defendant did insist that the plaintiff give advance notice regarding the anticipated need for inspection services. Because of this rule, there were a number of occasions during the period prior to February 9, 1959 when completed dehumidifiers were ready for the beginning of the 40-hour operational test but the plaintiff was unable to begin the operational testing of such units because no Government inspector was present to make the pre-test inspection then required by the defendant; and there were some occasions when the plaintiff was required to extend the operational testing of dehumidifiers beyond the prescribed 40-hour period because no Government inspector was present at the end of the prescribed 40-hour period to witness the termination of the operational test and to check the log concerning such test.

The unavailability of a Government inspector at such times seriously delayed the plaintiff in meeting its production schedule, as alleged in the third count of the petition, and increased the plaintiff's cost of performing the contract.

The defendant's rule with respect to the giving of 72 hours' advance notice by the plaintiff concerning the anticipated need for Government inspection services was not based upon any provision of the contract. On the contrary, it must be concluded that the rule was inconsistent with the provisions of the contract. When the defendant inserted in the contract express provisions whereby certain testing procedures were to be witnessed by a Government inspector, the defendant impliedly agreed to make the services of a Government inspector available for such purposes whenever the services of an inspector were reasonably required, so as not to impede the plaintiff in the performance of the work under the contract.

The defendant points out that during the 5-year period immediately preceding the award of the present contract to the plaintiff, the latter had performed several other contracts for the defendant; and that the inspection services by Government personnel in connection with such other contracts had been performed by an itinerant inspector on an on-call basis. Since the record does not reveal the nature of the inspection services performed by Government personnel in connection with the previous contracts, this circumstance cannot be regarded as overcoming the implied commitment by the defendant in the present contract to make inspection services available to the plaintiff whenever they were reasonably needed in connection with the performance of the 40-hour operational test, where time was of the essence.

As indicated in the findings, it is my opinion that judgment should be entered for the plaintiff in the amount of $5,000

on the aspect of the case previously discussed.

The plaintiff, in addition to complaining about the unavailability of Government inspection services at the beginning and end of the 40-hour operational test, also asserts in the third count of the petition that it was the responsibility of the defendant to have a Government inspector present at all times during the performance of the 40-hour operational test; and that if the defendant had discharged this duty, it would not have been necessary for the plaintiff to provide personnel to witness and record the results of the test. The plaintiff bases this contention upon a statement in the contract specifications to the effect that "Tests shall be witnessed by the Government inspector * * *."

The plaintiff's contention in this respect cannot be accepted, in view of the following express provision contained elsewhere in the specifications:

* * * [T]he Contractor shall provide the necessary personnel, adequate test facilities and supplies required for the performance of all required tests, both pre-production, production and final acceptance. Test records will be maintained by the Contractor and made available for use by the Government.

The provision relied on by the plaintiff, to the effect that "Tests shall be witnessed by the Government inspector," was undoubtedly inserted for the benefit of the defendant, the purpose being to establish the right of the defendant to have a Government inspector present at any time, or at all times, while tests were in progress. If the defendant elected to have an inspector present only during portions of a test, this did not provide any sound basis for a complaint by the plaintiff.

DAVIS, Judge, (concurring):

When this case was earlier before us on the question of whether plaintiff was entitled to a *de novo* trial on the merits of this claim, I dissented from the court's order (in favor of *de novo* trial) on the ground that the failure to supply Government inspectors was a constructive change within the Changes Article and therefore within the Board's jurisdiction. Now that the case has been tried here under the court's directive, I bow to the prior decision and on the merits agree with and join in the court's opinion and judgment.