**PENGUIN INDUSTRIES, INC.**

v.

**The UNITED STATES.**

**No. 198–74.**

United States Court of Claims.

Feb. 18, 1976.

Frederick D. Sarkis, Bryn Maur, Pa., attorney of record, for plaintiff.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before DAVIS, NICHOLS, and KASHIWA, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

PER CURIAM:

This case comes before the court on defendant's motion, filed November 10, 1975, moving that the court adopt, as the basis for its judgment in this case, the recommended decision filed September 26, 1975, by then Trial Judge Hal D. Cooper (since resigned), pursuant to Rule 166(c), plaintiff having failed to file a request for review by the court thereof and the time for so filing having expired. Upon consideration thereof, without oral argument, since the court agrees with the trial judge's recommended decision, as hereinafter set forth, it hereby grants defendant's motion and affirms and adopts the recommended decision as the basis for its judgment in this case. It is therefore concluded that plaintiff has failed to show that the findings and decision of the Armed Services Board of Contract Appeals, sustaining the partial termination by default of plaintiff's supply contract, are unsupported by substantial evidence or that the Board acted arbitrarily or capriciously or that the conclusion reached is erroneous as a matter of law and, accordingly, plaintiff's motion for summary judgment is denied, defendant's cross-motion is granted and plaintiff's petition is dismissed.

## OPINION OF TRIAL JUDGE

COOPER, Trial Judge: Plaintiff appeals, under Wunderlich Act standards,[1]

---

1.  68 Stat. 81, 41 U.S.C. §§ 321–22 (1970).

an opinion by the Armed Services Board of Contract Appeals sustaining the partial termination for default of plaintiff's supply contract.[2] Having failed to show that the Board's findings are unsupported by substantial evidence or that the Board acted arbitrarily or capriciously or that the conclusion reached is erroneous as a matter of law, plaintiff's appeal cannot be sustained and the Board must be affirmed.

Plaintiff contracted to supply a quantity of ignition cartridges. It submitted the cartridges in 27 lots, lots 1–22, and 27 having been manufactured by a subcontractor, plaintiff manufacturing only the assemblies in lots 23 through 26. When defendant tested the cartridges in accordance with a contractually specified sampling and testing plan, all of the lots, except lot 25, passed the tests and were accepted. Lot 25 was rejected. Plaintiff refused either to correct the defective cartridges or to submit a new lot, whereupon defendant held plaintiff in default and terminated the contract.

Each of the cartridges includes a flash tube assembly. The flash tube assembly consists of a cardboard tube one end of which is glued into a hole in a disk. The end of the tube is covered with a fluorescent paper. It was found that the cartridges that failed in lot 25 had an excess of glue in the flash tube assembly, and that this excess had formed a membrane across the end of the tube which restricted the flow of gases from the primer and effectively prevented ignition of the cartridge. Neither the drawings nor the detailed specification described either the amount of glue to be used to secure the flash tube to the disk, or the points to which the glue should be applied. Since the drawings and specification were silent on this point, plaintiff had devised its own gluing process. It made no inspection of the completed assemblies for excessive glue. Similarly, the assigned inspector did not monitor the gluing process or perform visual inspection for excessive glue; his inspec-

tion was limited to characteristics specifically mentioned in the detailed specification. Those specifications identified certain "critical", "major" and "minor" defects and prescribed the method of inspection required for each. There was no mention of glue in the flash tube as a potential defect.[3]

Plaintiff argues that the rejection of lot 25 was improper because the data package or specification under which these cartridges were produced was defective in that it neither specified glue in the flash tube as a critical defect nor specified that as a point of inspection. However, the Board found, with ample record support that selection of the method of applying the glue was left to the manufacturer; that it was readily apparent to both parties that excessive glue in the flash tube could interfere with transmission of the flash employed to ignite the cartridge; that standard manufacturing techniques could be used to apply the glue without accumulating an excessive quantity; that this is a relatively elementary task; and that it was plaintiff's poor workmanship which resulted in the problems with lot 25. Further, it appears that no other manufacturer had experienced this problem and that this was the only lot with which plaintiff had any difficulty. On these facts, which must be accepted on this appeal, plaintiff has failed to sustain its burden and the Board must be sustained in its conclusion that the data package was not defective, *Clark Grave Vault Co. v. United States,* 178 Ct.Cl. 52, 371 F.2d 459 (1967).

Nor was defendant required to inspect the manner in which the glue was applied. Plaintiff was an experienced contractor and used an acceptable procedure but, with respect to lot 25, it performed poorly. Plainly, defendant is not required to provide inspection for every routine task a contractor is to perform. Inspections are for the benefit of defendant, not the contractor, and the

2. *Penguin Industries, Inc.,* 73–2 BCA ¶ 10,262.

3. In light of the problem encountered with lot 25, defendant has amended the specification to specify glue in the flash tube as a potential defect and prescribed inspection procedures for this defect.

failure of defendant to provide for an inspection does not relieve the contractor of its responsibilities under the contract. *Kaminer Constr. Corp. v. United States,* 203 Ct.Cl. 182, 488 F.2d 980 (1973); *Red Circle Corp. v. United States,* 185 Ct.Cl. 1, 398 F.2d 836, (1968); *Russell R. Gannon Co. v. United States,* 189 Ct.Cl. 328, 417 F.2d 1356 (1969).

Plaintiff further contends that the Board erred in interpreting the contract as permitting rejection of cartridges for defective workmanship. It maintains that the contract was one for supply of an article manufactured to government specifications; that defendant could reject the cartridges only for ballistic failures resulting from a "critical" or "major" defect identified in those specifications; and that neither poor workmanship nor glue in the flash tube was, under the contract, classified as a critical or major defect.

 While detailed specifications for the cartridges were provided, and certain quality assurance inspections were required the specifications did not spell out in detail the manufacturing processes by which the cartridges were to be fabricated. It was left to the contractor to use its own judgment, experience and know-how in determining how to manufacture certain aspects of the cartridge. Thus plaintiff construes the contract too narrowly when it contends that it had only to meet the specifications set out in the contract. The fact is it had to go beyond those specifications as, for example, in the case of devising a method of gluing the flash tube to the disk. As to this limited aspect, the contract was more like a "performance" contract than a "design" specification and, as in a performance contract, the contractor must assume responsibility for the means and methods selected to achieve the end result. *J. L. Simmons Co. v. United States,* 188 Ct.Cl. 684, 412 F.2d 1360 (1969). In short, it had the obligation to adopt and use a process of gluing that would achieve, in a workmanlike manner, a functional cartridge. This plaintiff did, except with respect to lot 25.

Under paragraph 5 of the General Provisions, Standard Form 32, defendant had the right to inspect the articles at all times prior to acceptance and to reject any of the lots found to be defective in material or workmanship. Section 4.2.3.2.2 of the basic specification provided that if, in a ballistics test, any round failed to function for reasons attributable to cartridge failure, the lot was to be rejected. The facts are that the government's tests revealed defects in workmanship which caused cartridge failure, and that the defects pertained to those aspects of the work for which plaintiff must bear responsibility. Accordingly, the termination for default was proper.

The plaintiff's motion for summary judgment is denied, the defendant's cross-motion is granted and the petition is dismissed.