**DANGFENG SHEN HO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–202 C.

United States Court of Federal Claims.

March 30, 2001.

Stephen M. Shaw, Honolulu, HI, for plaintiff.

E. Michael Chiaparas, with whom were David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Donald E. Kinner, Assistant Director, Civil Division, United States Department of Justice, Washington, DC, for defendant. Alan D. Groesbeck, United States Department of Agriculture, Washington, DC, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This is a suit by a former contractor with the United States Department of Agriculture (USDA) for monetary and equitable relief arising out of the nonrenewal of a contract for agricultural marketing services. Plaintiff contends that defendant breached the contract by failing to provide written performance evaluations of plaintiff's services as contractor and by failing to exercise the government's option to renew the contract. Defendant argues that it provided plaintiff notice of deficiencies in plaintiff's performance to the extent required by the contract and that defendant was under no obligation to exercise its option to renew the contract. The suit comes before the court on the par-

ties' cross-motions for summary judgment and on defendant's alternative partial motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim on which relief can be granted.

Count I of the complaint alleges that defendant breached its contract with plaintiff and requests damages resulting from the breach. Complaint ¶¶ 13, 15. Count II of the complaint requests reformation of the contract to give plaintiff the "benefit of her bargain." Complaint ¶ 17. Count III of the complaint requests a declaratory judgment of plaintiff's "rights and duties under the contract." Complaint ¶ 21. Count IV of the complaint requests the "correction of the Government's records concerning" plaintiff. Complaint ¶ 22.

For the following reasons, defendant's motion for summary judgment is GRANTED with respect to Counts I and III of the complaint, and plaintiff's cross-motion for summary judgment is DENIED. Defendant's partial motion, in the alternative, to dismiss is GRANTED with respect to Counts II and IV of the complaint.

## I. Background

The USDA hired plaintiff as an Agricultural Marketing Specialist for its Agricultural Trade Office (ATO) in Shanghai, China, on March 3, 1996. Defendant's Proposed Findings of Uncontroverted Fact (DPFUF) ¶¶ 1, 4–5.[1] Paragraph H.2 of the contract provided for an initial contract period ending on September 30, 1996. Defendant's Appendix (Def.App.) at 11. Paragraph H.4 provided that the contract was renewable at defendant's option for four one-year terms after the initial period. Id. Paragraph F.4 provided that plaintiff "shall receive a written evaluation of ... her performance 60 days prior to the end of each contract period" and that "[a] satisfactory performance evaluation is required, otherwise, [the] contract will not be renewed." Id. at 10. Defendant twice renewed plaintiff's contract for one-year additional terms on September 26, 1996 and on

---

1. The facts taken from Defendant's Statement of Facts and Defendant's Appendix are not disputed by plaintiff. Plaintiff frequently cites Defendant's Appendix in her brief and her Statement of Facts.

October 16, 1997. *Id.* at 24, 29. Defendant did not provide plaintiff written performance evaluations prior to either the end of the initial contract period on September 30, 1996 or the end of the first one-year renewal term on September 30, 1997. Plaintiff's Proposed Findings of Uncontroverted Fact (PPFUF) ¶¶ 2, 6.

However, on November 17, 1997, plaintiff's supervisor, Scott Reynolds, gave plaintiff a written evaluation of her performance. DPFUF ¶ 13; Declaration of Dangfeng Shen Ho, filed February 20, 2001 (Second Ho Aff.) ¶ 5(a).[2] The evaluation identified several strengths in plaintiff's performance, including organizational abilities, linguistic skills, and loyalty to the ATO, and several areas of "concern", including missed deadlines, lack of punctuality, and the conduct of personal business by plaintiff while at work. Def.App. at 199.

On September 9, 1998, plaintiff and Mr. Reynolds had a dispute over a proposal to send the film crew of a Chinese television station to the United States in order to produce a documentary about U.S. agriculture. Def.App. at 170. Mr. Reynolds ultimately decided against the proposal. *Id.* at 74. On September 11, 1998, Mr. Reynolds informed plaintiff that he had decided not to seek a renewal of her contract. DPFUF ¶ 15. At plaintiff's request, Mr. Reynolds gave plaintiff a written performance evaluation on September 15, 1998. *Id.* Plaintiff subsequently requested that her contract be extended by one month, and Mr. Reynolds agreed. *Id.* ¶ 17. Defendant's contracting officer and plaintiff signed a standard form extending plaintiff's contract through October 31, 1998. Def.App. at 32–33.

On or about December 8, 1998, a contracting action form memorializing a "Resignation of Personal Services Contract" and authorizing a lump sum payment of unused annual leave was sent to plaintiff. Def.App. at 36.

Plaintiff wrote to the contracting officer, Benjamin Dille, on January 21, 1999, as well as to another official, Robert Frazier, stating that she refused to sign the form because she had not resigned. Def.App. at 38. Plaintiff wrote to Mr. Dille again on April 7, 1999, requesting reinstatement of her contract on grounds that Mr. Reynolds had retaliated against her. Def.App. at 41–42. Plaintiff requested that her claim relate back to January 21, 1999. *Id.* Plaintiff also filed a complaint with the USDA. Def.App. at 174–77. Mr. Dille wrote to plaintiff on April 28, 1999, denying her claim. *Id.* at 59–63. Mr. Dille stated that the renewal of plaintiff's contract was at the government's sole discretion, that he had investigated plaintiff's retaliation claim, and that he had found no evidence that Mr. Reynolds had committed any illegal acts. *Id.* at 59–61. Plaintiff brought suit in this court on April 10, 2000. Complaint at 1.

## II. Discussion

The parties have cross-moved for summary judgment on all counts of the complaint. Defendant's Motion for Summary Judgment Or, in the Alternative, Partial Motion to Dismiss for Lack of Jurisdiction or for Failure to State a Claim Upon Which Relief Can Be Granted (Def.Mot.) at 4; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment Or, in the Alternative, Partial Motion to Dismiss for Lack of Jurisdiction or for Failure to State a Claim Upon Which Relief Can Be Granted and Plaintiff's Cross–Motion for Summary Judgment (Pl.Opp.) at 1. Defendant has moved to dismiss Counts II, III and IV of the complaint for failure to state a claim or lack of subject matter jurisdiction. The court will first address defendant's motion to dismiss, and then discuss the parties' cross-motions for summary judgment.

---

2. Plaintiff contested the finding that she had received Mr. Reynolds's written evaluation in her Statement of Genuine Issues, filed on November 15, 2000, at ¶ 13, but plaintiff's affidavit filed on February 20, 2001 acknowledged that she had received the evaluation on November 17, 1997. *See* Second Ho Aff. ¶ 5(a) ("On Nov. 16, 1997 ... Declarant had a disagreement with Scott Reynolds. He handed Declarant a piece of paper the next day, which listed areas of Declarant's work performance he perceived to be in need of improvement, as well as areas which he felt were fine."). At oral argument, plaintiff's counsel conceded that plaintiff had received this document. Transcript of March 1, 2001 Oral Argument (Tr.) at 60.

### A. Motion to Dismiss

#### 1. Reformation

In Count II of her complaint, plaintiff states that "the contract should be reformed to permit Plaintiff to obtain the benefit of her bargain, including status as an employee of said Government during the contract period." Complaint ¶ 17. Defendant has moved to dismiss Count II of the complaint under Rule 12(b)(4) of the United States Court of Federal Claims for failure to state a claim upon which relief can be granted. Def. Mot. at 32–34. Dismissal under Rule 12(b)(4) is appropriate "when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998); RCFC 12(b)(4). A court considering a motion to dismiss under Rule 12(b)(4) "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [the nonmovant's] favor." *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); RCFC 12(b)(4).

■■■ Reformation of a contract is an equitable remedy that may be invoked in this court only in limited circumstances, most commonly when the contract contains a mutual mistake of fact, a unilateral mistake of which the other party was or should have been aware, or provisions that are contrary to law. *See American Telephone & Telegraph v. United States*, 177 F.3d 1368, 1376 (Fed.Cir.1999); *McClure Elec. Constructors, Inc. v. Dalton*, 132 F.3d 709, 711 (Fed.Cir. 1997); *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed.Cir.1994). Plaintiff has alleged no such circumstance, and is therefore not entitled to the remedy of reformation.[3] Defendant's Motion to Dismiss Count II under Rule 12(b)(4) or Rule 12(b)(1) is GRANTED. Count II is dismissed with prejudice.

#### 2. Declaratory Relief

In Count III of her complaint, plaintiff requests the declaratory relief of "a judicial determination of her rights and duties under this contract." Complaint ¶ 21. Defendant has moved to dismiss Count III of the complaint under Rule 12(b)(1) of the United States Court of Federal Claims for lack of subject matter jurisdiction on the grounds that this court may not grant the equitable remedy of declaratory relief in this case. Def. Mot. at 34–35. Subject matter jurisdiction is a "threshold matter" that must be addressed before the court discusses the merits of the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1352 (Fed.Cir.2000).

■■■ The Tucker Act, 28 U.S.C. § 1491(a)(2), permits this court to grant nonmonetary relief on claims arising under the Contract Disputes Act (CDA), 41 U.S.C. § 609(a)(1), when the claims concern "disputes on which a decision of the contracting officer has been issued." 28 U.S.C. § 1491(a)(2). Defendant argues that plaintiff's claim for declaratory relief was not the subject of a contracting officer's decision. Def. Mot. at 36. A claim is new, for purposes of the Contract Disputes Act, when it does not present a "common set of operative facts" with matters presented in the claim submitted to the contracting officer. *Kinetic Builder's Inc. v. Peters*, 226 F.3d 1307, 1312 (Fed.Cir.2000); *see also Elkins v. Gober*, 229 F.3d 1369, 1374 (Fed.Cir.2000). In this case, the contracting officer addressed plaintiff's "rights and duties under the contract" at some length, finding that the government had held the option to renew the contract and had refused to exercise it. Def.App. at 59–63. While plaintiff's claim to the contracting officer was for reinstatement of the

---

[3]. Even if plaintiff had alleged facts entitling her to reformation, the court does not have jurisdiction over that claim under the Contract Disputes Act (CDA), 41 U.S.C. § 609(a)(1) (1996). *See* 28 U.S.C. § 1491(a)(2) (1996) (granting jurisdiction over CDA claims "on which a decision of the contracting officer has been issued"). Plaintiff did not mention reformation in her claim submitted to the contracting officer. Def.App. at 215.

Nor can reformation be reasonably viewed as necessarily included within the claims on which she did seek a decision from the contracting officer, since plaintiff's reformation and breach claims do not involve the "same set of operative facts." *Metric Constructors, Inc. v. United States*, 44 Fed.Cl. 513, 518 (1999), *aff'd*, 2001 WL 303240 (Fed.Cir.2001).

contract, rather than for declaratory relief, the contracting officer's decision encompassed the subject matter of plaintiff's claim for declaratory relief and addressed the same facts. This court has jurisdiction of requests for declaratory relief in suits arising under the CDA even when the plaintiff does not request such relief from the contracting officer. *See Information Sys. & Networks Corp. v. United States*, 48 Fed.Cl. 265, 267–68 (2000); *Emery Worldwide Airlines, Inc. v. United States*, 47 Fed.Cl. 461, 468 (2000) ("The instant requests for declaratory relief herein are exactly the type of 'non-monetary' disputes envisioned by the 1992 amendment [permitting equitable relief over Contract Disputes Act claims].").

■ Defendant also argues that, if the court grants defendant summary judgment on Count I of the complaint, the court no longer has jurisdiction over Count III because Count III is no longer incident to a monetary claim. Def. Mot. at 36–37. This court does not lose jurisdiction over plaintiff's nonmonetary claims arising under the CDA when it dismisses her monetary claims. The Tucker Act does not require that nonmonetary CDA claims be incident to monetary claims for this court to exercise jurisdiction. *See* 28 U.S.C. § 1491(a)(2) ("The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including . . . nonmonetary disputes on which a decision of the contracting officer has been issued."); *Sharman Co. v. United States*, 2 F.3d 1564, 1572 (Fed.Cir. 1993) (finding that § 1491(a)(2), as amended in 1992, gives this court jurisdiction to hear nonmonetary claims arising under the Contract Disputes Act whether or not those claims are incident to monetary claims). This court has heard claims arising under the CDA requesting only nonmonetary relief. *See, e.g., Alliant Techsys., Inc. v. United States*, 178 F.3d 1260, 1267–70 (Fed.Cir. 1999); *Libertatia Assocs., Inc. v. United States*, 46 Fed.Cl. 702, 702–03 & n. 1 (2000); *Newport News Shipbldg. and Dry Dock Co. v. United States*, 44 Fed.Cl. 613, 614 (1999). Because the court has jurisdiction of plaintiff's claim for declaratory relief, defendant's

motion to dismiss Count III under Rule 12(b)(1) is DENIED.

### 3. Correction of Records

Count IV of plaintiff's complaint states that "Plaintiff's records at the Government have been tarnished by sham and dilatory materials placed in it by Government employees." Complaint ¶ 22. Defendant has moved to dismiss Count IV for lack of subject matter jurisdiction arguing, as with Count III, that the contracting officer did not issue a decision on that claim and that this court lacks jurisdiction under 28 U.S.C. § 1491(a)(2). Def. Mot. at 36.

■ The contract incorporated 48 C.F.R. § 52.233–1, which provides for the resolution of disputes by the contracting officer and states that "all disputes arising under or relating to this contract shall be resolved under this clause." 48 C.F.R. § 52.233–1(b) (1995). The same section also states that "[t]his contract is subject to the Contract Disputes Act of 1978." 48 C.F.R. § 52.233–1(a). As discussed above, the CDA requires that all claims raised in this court be raised before the contracting officer or arise from the same set of operative facts as those considered by the contracting officer. *Kinetic Builder's*, 226 F.3d at 1312. A claim fulfills the CDA's jurisdictional requirements if the claim "provide[s] adequate notice to the contracting officer of the[ ] existence, amount, and general nature" of the claims. *R.J. Sanders, Inc. v. United States*, 24 Cl.Ct. 288, 292 n. 2 (1991). The court has jurisdiction if it " 'will have to review the same or related evidence [that the contracting officer reviewed] to make its decision.' " *Kinetic Builder's*, 226 F.3d at 1312 (quoting *Placeway Constr. Corp. v. United States*, 920 F.2d 903, 907 (Fed.Cir.1990)). Here, plaintiff alleged in her claim to the contracting officer that her supervisor had put a "negative set of documents" in plaintiff's file in order to cause plaintiff's improper termination, and requested that her contract be reinstated. Def.App. at 41. The court finds that these aspects of plaintiff's claim gave the contracting officer "adequate notice," *see R.J. Sanders* at 292 n. 2, that plaintiff wanted the propriety of the

inclusion of certain documents in her records examined. The court also notes that, in ruling on plaintiff's claim for correction of records, the court reviews the same evidence as the contracting officer reviewed in his investigation of plaintiff's claim that her contract was improperly terminated. For the foregoing reasons, the court finds that plaintiff's claim for correction of records and the claim of improper termination arise from the same set of operative facts for purposes of this court's jurisdiction under the CDA.

The court therefore finds that it has jurisdiction of plaintiff's claim for correction of records. Defendant's motion to dismiss Count IV of the complaint is DENIED.

### B. Summary Judgment

Summary judgment is warranted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rules of the United States Court of Federal Claims (RCFC) 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact that might significantly affect the outcome of the litigation is material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The movant is entitled to summary judgment if the nonmovant fails to make a showing sufficient to establish an element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The evidentiary standard that each party is required to overcome at trial governs the disposition of each element of the case on summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the nonmovant is required to show an element of its case by a preponderance of the evidence at trial, summary judgment may be granted as to that element upon a showing that the nonmovant has failed to prove that element by a preponderance of the evidence. *Id.* The court must draw all reasonable inferences in favor of the nonmovant. *Id.* at 255, 106 S.Ct. 2505. When the case is before the court on cross-motions for summary judgment, each motion is evaluated under the same standard. *Cubic Def. Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999). Contract interpretation is a question of law appropriately resolved on summary judgment. *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 (Fed.Cir.1988).

In Count I of her complaint, plaintiff alleges both that defendant breached the contract and that defendant's conduct was in bad faith. Complaint ¶ 13. Plaintiff alleges that defendant breached the contract by failing to provide performance evaluations, failing to notify plaintiff of the deficiencies in her performance, failing to renew the contract, and placing "negative and slanderous material" in plaintiff's personnel file. *Id.* Plaintiff also alleges that defendant retaliated against her for whistleblowing. *Id.* The following discussion therefore addresses each of plaintiff's breach of contract allegations, then her retaliation claim, and finally the argument that defendant acted in bad faith. The court then addresses Counts III and IV of the complaint, which request declaratory relief and the correction of plaintiff's records.

### 1. Breach of Contract by Failure to Provide Evaluations

Plaintiff alleges in Count I of her complaint that defendant breached plaintiff's contract by failing to provide timely performance evaluations. Complaint ¶ 13. Defendant states that plaintiff was given a performance evaluation in November 1997, and that plaintiff was not entitled to any additional evaluation under the contract.[4] Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment or, in the Alternative, Partial Motion to Dismiss for Lack of Jurisdiction or for Failure to State a Claim upon Which Relief can be Granted, and Defendant's Response to Plaintiff's Cross–Motion for Summary Judgment (Def.Reply) at 5–7.

---

**4.** Paragraph F.2 of the contract required the government to give plaintiff "written notice ... that continuation of the contract may be in jeopardy" before a termination prior to the end of a contract term. Def.App. at 9. The contract included neither that nor any other notice requirement with respect to a nonrenewal of the contract after the expiration of a contract term. *See* subsection III.2 *infra*.

Paragraph F.4 of plaintiff's contract provides, in relevant part:

The contract Employee shall receive a written evaluation of his/her performance 60 days prior to the end of each contract period. A satisfactory performance evaluation is required, otherwise, contract will not be renewed. A copy shall be provided to the Contracting Officer for inclusion in the contract file.

Def.App. at 10. It is undisputed that plaintiff did not receive written evaluations before the expiration of the first two contract periods. PPFUF ¶¶ 2, 6; Defendant's Statement of Genuine Issues ¶¶ 2, 6.

 It is well established that a plaintiff will not prevail in an action for breach of contract when the provisions alleged to have been violated were not inserted into the contract for the benefit of the plaintiff. *See Cessna Aircraft Co. v. Dalton*, 126 F.3d 1442, 1454 (Fed.Cir.1997) ("[T]he primary purpose behind the Cancellation of Items clause is to protect the government's interest .... Consequently, the clause may not form the basis for a contractor's right of action."), *cert. denied*, 525 U.S. 818, 119 S.Ct. 57, 142 L.Ed.2d 44 (1998); *American Elec. Contracting Corp. v. United States*, 217 Ct.Cl. 338, 579 F.2d 602, 612–13 (1978) (denying breach of contract claim based on regulation incorporated into contract when regulation was promulgated for government's benefit); *Penguin Indus., Inc. v. United States*, 209 Ct.Cl. 121, 530 F.2d 934, 936–37 (1976) (stating that failure to exercise contractual right of inspection does not give rise to breach of contract action when inspection right was for defendant's benefit); *Russell R. Gannon Co. v. United States*, 189 Ct.Cl. 328, 417 F.2d 1356, 1359 (1969) ("The provision relied on by the plaintiff, to the effect that 'Tests shall be witnessed by the Government inspector,' was undoubtedly inserted for the benefit of the defendant .... If the defendant elected to have an inspector present only during portions of a test, this did not provide any sound basis for a complaint by the plaintiff."). A party to a contract may waive provisions included in the contract for that party's benefit without incurring liability. *Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 508 F.2d 817, 820 (1974); *Kenneth Reed Constr. Corp. v. United States*, 201 Ct.Cl. 282, 475 F.2d 583, 590 (1973).

 The court notes that ¶ F.4 stated that the renewal of plaintiff's contract was dependent on her having received a satisfactory performance evaluation. Because the requirement that plaintiff's performance be found satisfactory serves to protect the government's interests by ensuring that its contractors are performing adequately and by avoiding improvident renewals, the court finds that the provision was included in the contract for the benefit of defendant, rather than plaintiff. *See Somali*, 508 F.2d at 820. Accordingly, plaintiff cannot prevail on a breach of contract claim arising from a failure by defendant to provide performance evaluations under ¶ F.4.

Moreover, even if the performance evaluation contemplated by ¶ F.4 were deemed to be for plaintiff's benefit, so that defendant did breach the contract by failing to provide plaintiff such performance evaluations, defendant's breach was irrelevant to the nonrenewal of plaintiff's contract for a one-year term beginning on October 1, 1998. Paragraph H.4 of the contract placed the decision to renew the contract within defendant's discretion, subject only to plaintiff's agreement to the renewal. Def.App. at 11 ("This contract is renewable at the option of the Government with agreement of the Contract employee."). *See Manloading & Mgmt. Assocs. v. United States*, 198 Ct.Cl. 628, 461 F.2d 1299, 1301–03 (1972) (stating that defendant's refusal to exercise option did not entitle plaintiff to damages for breach of contract); *Cont'l Collection & Disposal, Inc. v. United States*, 29 Fed.Cl. 644, 652 (1993) ("[T]he duty of a contracting officer to accord a contractor fair treatment creates no binding obligation to exercise an option to extend a contract for additional years.").

Plaintiff argues that defendant's failure to give her performance evaluations before the renewals of the contract in 1996 and 1997 prevented her from improving her performance and thereby led to the nonrenewal of her contract. Tr. at 69. Plaintiff's argument that the nonrenewal of her contract was caused by the lack of performance evalua-

tions assumes, incorrectly, that she had a right to the renewal of her contract, or to evaluations before any nonrenewal. In fact, she had neither right. The contract requires performance evaluations only for a termination before the expiration of the contract period. *See* Def.App. at 9, ¶ F.2 (stating that "the Government through written notice shall advise the Contractor that continuation of the contract may be in jeopardy" upon determining that the contractor's performance is unacceptable).

Moreover, even if plaintiff were entitled to some notice of defendant's concerns about her performance, the court finds that plaintiff had such notice. Mr. Reynolds gave plaintiff an evaluation on November 17, 1997, identifying several problem areas in plaintiff's performance. Def.App. at 199; Second Ho Aff. ¶ 5(a). In that evaluation, Mr. Reynolds identified four strong points in her performance, but also identified six problem areas and made additional statements indicating that plaintiff had not provided "responsible performance and leadership" and requesting "[l]ess talk, more output." Def. App. at 199. Plaintiff's conclusory assertion that she was unaware of defendant's concerns is met by uncontroverted evidence that she was advised in writing of those con-

cerns.[5] *See Adreani v. First Colonial Bank-shares Corp.*, 154 F.3d 389, 397 (7th Cir. 1998) (affirming grant of summary judgment on grounds that "even though [the plaintiff] was not given written performance evaluations to indicate that he was falling short of his employer's legitimate expectations ... he had sufficient warnings from his supervisors to put him on notice that his performance was not satisfactory.").

### 2. Breach of Contract by Failure to Warn Before Termination

■ Plaintiff also argues that defendant breached a contract provision that required defendant to advise the contractor that "continuation of the contract may be in jeopardy" before terminating the contract. Complaint ¶ 7; Def.App. at 9. The section in question reads as follows:

F.2 *Contractor Performance* Should the overall performance of the Contractor become unacceptable to the Government, the Government through written notice shall advise the Contractor that continuation of the contract may be in jeopardy. Should performance still remain unacceptable after next delivery or period specified in which to correct performance, then Gov-

5. Plaintiff cites *King v. Dep't of Health and Human Servs.*, 133 F.3d 1450 (Fed.Cir.1998), as support for the proposition that the performance evaluations given plaintiff were required to conform to specific standards and that the standards were not met, *see* Tr. at 5–7, but the court does not believe that *King's* analysis is applicable here. In *King*, the Court of Appeals for the Federal Circuit distinguished a "progress report" from a "performance evaluation" for purposes of determining whether an employee had been subject to a "personnel action" under the Whistleblower Protection Act, 5 U.S.C. § 2302(a)(2). *King*, 133 F.3d at 1452. The *King* court relied on the Office of Personnel Management (OPM) definition of "progress review" as "communicating with the employee about performance compared to the performance standards of critical and noncritical elements" for purposes of determining whether the case was within the confines of the Whistleblower Protection Act. 133 F.3d at 1452; 5 C.F.R. § 430.203. The jurisdictional predicates of the Whistleblower Protection Act are not at issue here, however. The distinction between a progress report and a performance evaluation that was significant in *King* (specifically, whether the employee had suffered adverse employment action because of her whistleblowing comments,

or merely had been given an unfavorable report not necessarily indicative of her continued employment prospects) is not relevant to this portion of plaintiff's argument. Establishing that the evaluation plaintiff received was more akin to a "progress review" than to a "performance evaluation" under OPM standards would not mean that plaintiff did not receive an adequate evaluation, since nothing in the contract or elsewhere required that the evaluations given to plaintiff conform to OPM standards for a "performance evaluation." The court finds that the evaluation dated November 17, 1997 satisfied any obligation defendant may have had to provide plaintiff notice of her supervisor's concerns.

Plaintiff's reliance on *Potvin v. Metro. Life Ins. Co.*, 22 Cal.4th 1060, 95 Cal.Rptr.2d 496, 997 P.2d 1153 (2000), for the proposition that plaintiff was entitled to notice and a hearing before the nonrenewal of her contract, Tr. at 61–62, is also misplaced. *Potvin* involved a common law right to fair procedure available under California law, which provides procedural protections against "arbitrary decisions by private organizations." 95 Cal.Rptr.2d 496, 997 P.2d at 1156. That authority is not binding on this court and does not, in the court's view, shed light on the proper interpretation of the contract in this case.

ernment may notify Contractor that the contract is being terminated for unacceptable performance.

Def.App. at 9. This section clearly requires notice to the contractor of unacceptable performance as a precondition to termination before the end of the contract term. Here, the government did not terminate plaintiff; rather, the government declined to exercise the option to renew her contract. Defendant therefore did not breach this section of the contract.[6]

### 3. Plaintiff's Waiver of Any Breach of Contract

 Defendant argues that even if the provision in ¶ F.4 for performance evaluation prior to the exercise of the government's renewal option were for plaintiff's benefit in some respect, plaintiff waived that provision. Def. Reply at 7–8. Waiver refers to the "abdication of a right under a contract." *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 686 (1994). Waiver may occur by implication "when a performance date passes and the contractor has not been terminated for default." *SIPCO Servs. & Marine, Inc. v. United States*, 41 Fed.Cl. 196, 219 (1998). The elements of such a waiver are "failure to terminate within a reasonable time after the default under circumstances indicating forbearance" and "reliance by the [defaulting party] on the failure to terminate and continued performance by him under the contract, with the [nondefaulting party's] knowledge and implied or express consent." *DeVito v. United States*, 188 Ct.Cl. 979, 413 F.2d 1147, 1154 (1969). A material breach by the government does not terminate the contract; it merely gives the contractor the right to terminate, and a plaintiff may not elect to continue performance and later sue for breach. *See Cities Serv. Helex, Inc. v. United States*, 211 Ct.Cl. 222, 543 F.2d 1306, 1315 (1976) ("[A] contract—and the Government's right to terminate—remains in effect, regardless of any prior breach by the Government, where

the contractor fails to put an end to the contract for government breach before the Government exercises its right to terminate."); *Gov't Sys. Advisors v. United States*, 21 Cl.Ct. 400, 411 ("[I]f performance continues, the right to end the contract cannot be preserved even by explicit expression of intent by plaintiff.... Nor can plaintiff belatedly be heard to cry breach. The time for that is long past."), *vacated on other grounds*, 25 Cl.Ct. 554 (1990).

Here, even if defendant's failure to provide plaintiff evaluations of her performance could be viewed as affording the right to terminate the contract, plaintiff's failure to terminate the contract or demand an evaluation within a "reasonable time," *see DeVito*, 413 F.2d at 1154, waived defendant's breach. While the initial failure by defendant to complete a written evaluation of plaintiff occurred on July 31, 1996, plaintiff did not request such an evaluation until September 1998, and then only after she learned that defendant did not intend to renew her contract. Second Ho Aff. ¶¶ 3–4; Def.App. at 74–75; DPFUF ¶ 15. More than two years therefore elapsed between defendant's failure to evaluate plaintiff and plaintiff's request for an evaluation, and the court believes that such an interval was not a "reasonable time" under the doctrine of waiver. *See Am. W. Corp. v. United States*, 730 F.2d 1486, 1489 (Fed.Cir.1984) (holding that six weeks is a reasonable time for purposes of waiver); *Pinewood Realty Ltd. P'ship v. United States*, 223 Ct.Cl. 98, 617 F.2d 211, 213, 214 (1980) (holding that plaintiff's delay of less than four months in notifying defendant that plaintiff believed defendant to be in breach of contract waived claim); *Ling–Temco–Vought, Inc. v. United States*, 201 Ct.Cl. 135, 475 F.2d 630, 636–37 (1973) (holding that failure to indicate dissatisfaction for approximately two years waived breach claim); *Acme Process Equip. Co. v. United States*, 171 Ct.Cl. 324, 347 F.2d 509, 515 (1965) (holding that delay of more than a year waived breach), *rev'd on other grounds,*

---

6. Plaintiff also argues that defendant breached another provision of the contract, ¶ E.1, which requires that plaintiff be "informed in writing" if her "overall performance is in question." Complaint ¶ 6; Def.App. at 9. Paragraph E.1 refers to defendant's right to accept or reject plaintiff's

services, and appears to require that defendant give plaintiff written notice of any deficiencies in her performance before rejecting her services. Def.App. at 9. Since defendant did not reject plaintiff's services, ¶ E.1 is not relevant.

385 U.S. 138, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966). In addition, defendant continued to perform by accepting plaintiff's services and plaintiff continued to provide such services, indicating defendant's reliance on plaintiff's waiver of the alleged breach and plaintiff's consent to defendant's continued performance. *See DeVito*, 413 F.2d at 1154. Accordingly, even if the evaluation provision in ¶ F.4 were viewed as a provision included in the contract for plaintiff's benefit, plaintiff cannot recover because she waived the alleged breach.

### 4. Breach of Contract by Tarnishment of Records

Plaintiff also alleges, as part of her breach of contract claim, that defendant "poison[ed] the contractor's file and other records with the Government with negative and slanderous material." Complaint ¶ 13. Plaintiff does not state specifically in her complaint or supporting documents what material she refers to in this allegation. *Id.* Conclusory assertions without factual support are insufficient to defeat summary judgment. *Moore, U.S.A. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed.Cir.2000). Plaintiff claims in her cross-motion for summary judgment that defendant "concoct[ed] a fake 'resignation.'" Pl. Opp. at 13. The record contains an affidavit by Mr. Reynolds stating that the U.S. Embassy mistakenly assumed that plaintiff had resigned and forwarded a resignation form to her. Def.App. at 73, 210. The resignation form forwarded to plaintiff also states that "LUMP SUM PAYMENT IS AUTHORIZED FOR ANY ANNUAL LEAVE." *Id.* at 210. Mr. Reynolds states that the purpose of the document was to permit the lump sum payment. *Id.* at 73. Mr. Reynolds states, however, that plaintiff did not sign the form, and in fact the copy of the form that appears in the record is unsigned. *Id.* None of Mr. Reynolds's statements regarding the purpose of the resignation form are controverted by plaintiff. The court does not believe that, even if the form were mistakenly or intentionally included in plaintiff's file, it could conceivably be considered "negative and slanderous."

### 5. Retaliation

Plaintiff alleges in her complaint that defendant "retaliat[ed] against Plaintiff for whistleblowing regarding the unseemly conduct of a Government supervisor." Complaint ¶ 13. The court recognizes that remedies for retaliation for whistleblowing are provided by federal law in appropriate cases. *See* 5 U.S.C. § 1221(a) (1996). Paragraph H.6.1 of plaintiff's contract states, however, that she is "not a direct hire employee of the Government of the United States and, therefore, has no rights which might accrue therefrom, other tha[n] those specifically outlined in this contract." Def.App. at 11. Whistleblower rights are available to "an employee, former employee, or applicant for employment" of the United States. 5 U.S.C. § 1221(a) (1996). However, plaintiff was a contractor, not an employee, and was not entitled to the rights granted to employees, including, without limitation, rights under the Whistleblower Protection Act, unless those rights were specifically set out in the contract. It is uncontroverted that the contract contained no provision permitting plaintiff to recover for damages caused by retaliatory personnel actions. *See* Def.App. at 6–18. Accordingly, plaintiff cannot invoke the Whistleblower Protection Act.

Even if plaintiff were entitled to the protection of the Whistleblower Protection Act, she would not be entitled to sue on whistleblowing claims in this court. The exclusive remedy for personnel actions in violation of the Civil Service Reform Act is a proceeding before the Merit Systems Protection Board. *Worthington v. United States*, 168 F.3d 24, 26–27 (Fed.Cir.1999). The Tucker Act does not confer on this court jurisdiction of claims for improper personnel actions when those actions are within the purview of the Civil Service Reform Act. *United States v. Fausto*, 484 U.S. 439, 454, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Whistleblower protection is within the scope of the Civil Service Reform Act. *Id.* at 446, 108 S.Ct. 668. The court therefore has no jurisdiction of a Whistleblower Protection Act claim.

### 6. Bad Faith

Plaintiff also alleges that defendant acted in bad faith in declining to renew her contract. Complaint ¶ 13. Government officials are presumed to act conscientiously and in good faith in the discharge of their duties. *See, e.g., Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed.Cir.1986); *Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1301 (1976). The plaintiff must produce "clear and strong evidence" of bad faith to overcome this presumption. *Asco–Falcon II Shipping Co. v. United States,* 32 Fed.Cl. 595, 604 (1994). Bad faith may be shown by "evidence of some specific intent to injure" or by evidence that the government was "actuated by animus toward the plaintiff." *Kalvar,* 543 F.2d at 1302; *Librach v. United States,* 147 Ct.Cl. 605, 614, 1959 WL 7633 (1959).

Plaintiff contends that the government may be found to be in bad faith here because the government's conduct "violated the implied duty not to hinder [plaintiff's] performance." Pl. Opp. at 8.[7] Plaintiff cites *Malone v. United States,* 849 F.2d 1441 (Fed. Cir.1988), and *Kehm Corp. v. United States,* 119 Ct.Cl. 454, 93 F.Supp. 620 (1950), as support for the proposition that the government "has not enabled [plaintiff] to perform" and that the court "as a matter of law . . . can find this to be bad faith." Tr. at 17. The *Malone* and *Kehm* cases, however, dealt not with government officials' bad faith, but with the implied duty of good faith and fair dealing, a different aspect of contract law. *See Malone,* 849 F.2d at 1445 ("In our view, the government materially breached this contract. . . . '[T]he extent to which the behavior of [a] party failing to perform . . . comports with standards of good faith and fair dealing' is a significant factor in determining whether that party's breach is material.") (quoting Restatement (Second) of the Law of Contracts § 241(e) (1981)); *Kehm,* 93 F.Supp. at 623 (describing an "implied . . . obligation" to

"not hinder" the other party's performance and stating that "[w]e have now to determine . . . whether defendant's delays amounted to a breach of contract.").

The implied duty of good faith and fair dealing frequently addresses government delays and other hindrances alleged to have been placed by government actors in the way of a contractor's performance to such a degree that the government's conduct constitutes a breach of contract. *See, e.g., Essex Electro Eng'rs, Inc. v. Danzig,* 224 F.3d 1283, 1291 (Fed.Cir.2000) (stating that "every contract . . . imposes an implied obligation" not to hinder the other party and examining whether delay in submitting change proposals constituted breach of implied duty of good faith and fair dealing). The court has already rejected plaintiff's breach of contract argument. To the extent that plaintiff alleges that defendant's failure to renew plaintiff's option (an action consistent with the contract) should be compensated because it was in bad faith, *Malone* and *Kehm* are inapplicable. *See also Kalvar,* 543 F.2d at 1302–03 (requiring " 'some proof of malice or conspiracy' " for a showing a bad faith and finding that even "an incorrect reading of the contract," an "erroneous" determination that another offeror's proposal was acceptable, or "misguided" reliance on another offeror's information were insufficient to establish bad faith) (quoting *Colonial Metals Co. v. United States,* 204 Ct.Cl. 320, 494 F.2d 1355, 1361 (1974)); *Librach v. United States,* 147 Ct.Cl. 605, 614 (1959) (refusing to find bad faith when government conduct was "an honest mistake" and was "not actuated by animus"); *Knotts v. United States,* 128 Ct.Cl. 489, 121 F.Supp. 630, 636 (1954) (finding bad faith when government officer "initiated a conspiracy" to "get rid of" the plaintiff); *Gadsden v. United States,* 111 Ct.Cl. 487, 78 F.Supp. 126, 127 (1948) (stating that bad faith would be found if the defendant was "motivated alone by malice"); *Struck Constr. Co. v. United States,* 96 Ct.Cl. 186, 222, 1942 WL 4411

---

**7.** At oral argument, plaintiff argued that a different bad faith standard should apply because the contract was "not . . . negotiated" and therefore adhesive. Tr. at 34–35. The court disagrees. When a competent government contractor enters into a contract voluntarily, courts will not question the validity of the contract absent a showing

of fraud. *United States v. Wunderlich,* 342 U.S. 98, 100, 72 S.Ct. 154, 96 L.Ed. 113 (1951); *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1564–65 (Fed.Cir.1990). Plaintiff has not contended that her entry into the contract was involuntary or that any of defendant's conduct was fraudulent.

(1942) (finding bad faith when government conduct was "designedly oppressive"); *Libertatia*, 46 Fed.Cl. at 711 (2000) (finding bad faith upon a showing of specific intent to injure).[8]

Plaintiff also argues that defendant's failure to provide evaluations is itself evidence that defendant "specifically intended to disable" her. Pl. Opp. at 9. Plaintiff argues that "[a]s a result of the Government's failure to [provide written evaluations], Eva Ho was specifically injured in that she had no way to know which, if any, of her obligations were not satisfactory to Defendant." *Id.* at 9. The court has found that, under the contract, plaintiff had no right to evaluations and that, even if the contract were interpreted to require evaluations, plaintiff waived that requirement. Her conclusory assertion is simply not in accord with the undisputed facts. Further, even if plaintiff were injured, that in itself is not sufficient to show bad faith. Plaintiff must show an injury resulting from a "specific intent to injure." *Kalvar*, 543 F.2d at 1302. Nothing in the record indicates any such intent.

Plaintiff alleges that she believed Mr. Reynolds to have committed a variety of improper or illegal acts while she was under contract with the USDA, and that defendant's refusal to renew her contract was the result of her confronting Mr. Reynolds about those illegal acts.[9] *See* Complaint ¶¶ 9–10.

The court notes, however, that the memorandum signed by plaintiff on September 15, 1998, makes no reference to a confrontation between plaintiff and Mr. Reynolds about any illegal acts. Def.App. at 170–73. The memorandum refers only to a dispute over whether to send a Chinese film crew to the United States and notes that Mr. Reynolds ultimately agreed with plaintiff. *Id.* at 170. Plaintiff has acknowledged that Mr. Reynolds's concerns about her performance were documented in a written evaluation approximately ten months before the alleged dispute over the Chinese film crew occurred. Second Ho Aff. ¶ 5(a). Mr. Reynolds had expressed reservations about the quality of plaintiff's performance well before any occasion when plaintiff might have confronted him regarding any allegedly improper or illegal acts. Absent anything in the summary judgment record other than plaintiff's conclusory allegations, the court does not find that the nonrenewal of the contract was in bad faith. Plaintiff has not, in light of the reservations about plaintiff's performance that Mr. Reynolds had already expressed, shown any evidence of bad faith, let alone "clear and strong evidence" sufficient to overcome the presumption of good faith. *Asco–Falcon*, 32 Fed.Cl. at 604.[10]

Summary judgment is appropriate when the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence

---

8. Plaintiff also cites *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259 (10th Cir. 1988), as support for the proposition that "specific intent to injure" is not necessary for bad faith. Tr. at 17–18. The "good faith" at issue in *Big Horn*, which addressed a contract between private parties, was the implied duty of good faith under Nebraska law which is incorporated into contracts to protect the parties' reasonable expectations, the violation of which may constitute a breach of contract. 852 F.2d at 1267 & n. 12. The court has already found that defendant did not breach plaintiff's contract. The court notes in addition that Nebraska law does not govern this contract.

9. The court has already found that plaintiff cannot prevail on a suit under the Whistleblower Protection Act. *See* subsection II.B.5 *supra.* Here, however, plaintiff alleges retaliation as evidence that the nonrenewal of her contract was in bad faith. Retaliatory motives may, if proven, indicate that a government official acted in bad faith. *Labat–Anderson, Inc. v. United States*, 42

Fed.Cl. 806, 849–50 (1999) (noting that plaintiff had alleged that it had been excluded from competitive range in procurement as "retribution" for a protest and stating that, "if plaintiff's allegations are true, [the alleged conduct] would constitute an act of bad faith by the government"). The court therefore examines, as an element of plaintiff's bad faith claim, plaintiff's allegation that defendant retaliated against her.

10. Plaintiff states that it is "[s]ignificant[ ]" that Mr. Reynolds signed a leave slip for plaintiff on September 10, 1998, arguing that "*as of September 10, 1998*, the Government's intent was to renew the contract." Pl. Opp. at 12. However, the leave slip authorizes plaintiff's leave from September 24, 1998 to September 29, 1998. Def.App. at 218. Because plaintiff's contract was to terminate on September 30, 1998, Mr. Reynolds's signing the leave slip was not inconsistent with his later decision not to renew plaintiff's contract. The court sees nothing relevant to the issue of bad faith in the timing or existence of the leave slip.

of an element essential to that party's case," and when that party bears the burden of proof at trial for that element. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Specific intent to injure is an essential element of plaintiff's claim that the nonrenewal of her contract was in bad faith. *See Kalvar*, 543 F.2d at 1302–03. Defendant's summary judgment motion demonstrated the absence of evidence to support that element of plaintiff's claim, and the burden then shifted to plaintiff to show that there was adequate evidence on that element to create a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Because plaintiff would be required at trial to show specific intent to injure by "clear and strong evidence," *see Asco–Falcon*, 32 Fed.Cl. at 604, she must make the same showing to defeat defendant's motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Plaintiff has not made that showing.

Because there is no genuine issue of material fact with respect to any of plaintiff's breach of contract claims or with respect to her bad faith claim, the court GRANTS summary judgment to defendant on Count I of the complaint. Count I is dismissed with prejudice.

### 7. Declaratory Relief

Count III, as discussed in section II.2 *supra*, requests a declaration of plaintiff's "rights and duties under the contract." Complaint ¶ 21. Defendant has moved for summary judgment on Count III. Def. Mot. at 4. The court finds that Count III raises the same issues of contract interpretation that were raised in Count I. Count III excludes only ¶¶ 14 and 15 of the complaint in its discussion of the scope of the controversy.[11] The court has already considered and granted summary judgment to defendant on the issues of contract interpretation that are the subject of Count I of the complaint. For the same reasons, the court GRANTS summary judgment to defendant on Count III of the complaint. Count III is dismissed with prejudice.

### 8. Correction of Records

Count IV of the complaint states that plaintiff's records were "tarnished by sham and dilatory materials placed in it by Government employees" and requests "correction of the Government's records concerning" plaintiff. Complaint ¶ 22. Defendant has moved for summary judgment on Count IV. Def. Mot. at 4. As with plaintiff's claim of breach of contract by tarnishment of records, the court finds that plaintiff has not set forth adequate factual support of this assertion to defeat summary judgment. *See* subsection II.B.4 *supra*. Plaintiff offers nothing other than a conclusory allegation that "sham and dilatory materials" were placed in her file. Complaint ¶ 22. Plaintiff does not describe the materials placed in her file or state in what respect they were false. Accordingly, because plaintiff must offer more than a conclusory allegation to defeat summary judgment, *see Moore, U.S.A.*, 229 F.3d at 1112, the court finds that there is no genuine issue of material fact with respect to plaintiff's claim for correction of records. The court therefore GRANTS summary judgment to defendant on Count IV of the complaint. Count IV is dismissed with prejudice.

### III. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED with respect to Counts I, III and IV of the complaint, and Defendant's Motion to Dismiss is GRANTED with respect to Count II of the complaint. Plaintiff's Motion for Summary Judgment is DENIED. The court orders the following:

1. The Clerk of the Court is directed to enter judgment for defendant.

2. Each party shall bear its own costs.

IT IS SO ORDERED.

---

11. Paragraph 14 of the complaint states:
 The foregoing conduct further informed Plaintiff that defendant Government did not intend to comply with the terms and conditions of the contract.

Paragraph 15 of the complaint states:
As a result of Defendant's breach of the contract ("A") Plaintiff has suffered damages in amounts which will be amended according to proof but which now exceed US$36,000.00.