# United States Court of Appeals for the Federal Circuit

2006-1578, -1589

Donald C. Winter, SECRETARY OF THE NAVY,

Appellant,

v.

BATH IRON WORKS CORPORATION,

Appellee.

-------------------------------------------------------------------------------------

BATH IRON WORKS CORPORATION,

Appellant,

v.

Donald C. Winter, SECRETARY OF THE NAVY,

Appellee.

Kirk T. Manhardt, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the Secretary of the Navy. With him on the brief were Peter D. Keisler, Acting Attorney General, Jeanne E. Davidson, Director, and William F. Ryan, Assistant Director. Of counsel on the brief was James T. DeLanoy, Senior Trial Attorney, Office of the General Counsel, Navy Litigation Office, United States Department of the Navy, of Washington, DC.

Richard C. Johnson, Smith Pachter McWhorter, PLC, of Vienna, Virginia, argued for Bath Iron Works Corporation. Of counsel were Erin R. Karsman and David S. Stern.

Patricia H. Wittie, Oldaker, Biden & Belair, LLP, of Washington, DC, for amicus curiae American Shipbuilding Association.

Appealed from: United States Armed Services Board of Contract Appeals

Administrative Judge David W. James, Jr.

# United States Court of Appeals for the Federal Circuit

2006-1578, -1589

Donald C. Winter, SECRETARY OF THE NAVY,

Appellant,

v.

BATH IRON WORKS CORPORATION,

Appellee.

----------------------------------------------------------------------------

BATH IRON WORKS CORPORATION,

Appellant,

v.

Donald C. Winter, SECRETARY OF THE NAVY,

Appellee.

_____

DECIDED:  October 4, 2007

_____

Before NEWMAN, RADER, and PROST, <u>Circuit Judges</u>.

PROST, <u>Circuit Judge</u>.

The Department of the Navy ("Navy") appeals a December 22, 2005 decision of

the Armed Services Board of Contract Appeals ("ASBCA" or "board") holding that Bath

Iron Works Corporation ("BIW") was entitled to an equitable contract adjustment related to the repair of corroded pipes in a ship it was building for the Navy. Bath Iron Works Corp., ASBCA No. 54544, 06-1 BCA ¶ 33,158 (Dec. 22, 2005) ("Initial Decision"). BIW cross-appeals the board's April 21, 2006 decision to remand to the parties the determination of whether and to what extent any Contract Dispute Act ("CDA") interest was due as a result of the adjustment. Bath Iron Works Corp., ASBCA No. 54544, 06-1 BCA ¶ 33,272 (Apr. 21, 2006) ("Reconsideration Decision"). Because the ASBCA incorrectly concluded that an improperly performed flush of the piping at issue was a "defect" in the vessel, we vacate and remand the case for further proceedings and dismiss BIW's cross-appeal.

## I. BACKGROUND

On March 6, 1998, the Navy awarded BIW a fixed-price, incentive fee contract to construct six guided missile destroyers ("DDGs"). The contract included an insurance clause that precluded BIW from carrying insurance "against any form of loss of or damage to the vessels or to the materials or equipment therefor." Instead, the contract included an "all-risk" insurance clause, which provided that:

> The Government assumes the risks of loss of and damage to the vessels and such materials and equipment which would have been assumed by the underwriters if the Contractor had procured and maintained throughout the term of this contract, on behalf of itself and the Government, insurance . . . (i) under the forms of Marine Builders Risk (Navy Form-Syndicate) policy . . . as set forth in the pamphlet . . . dated 23 November 1942,[1] or (ii) under any policy forms which the Assistant Secretary of the Navy (RD&A), Insurance Office shall determine were customarily carried or would have been customarily carried by the Contractor in the absence of

---

[1] The 1942 Marine Builders Risk (Navy Form-Syndicate) policy provides coverage for "all risks, including fire, while [the vessel is] under construction and/or fitting out." (J.A. A200862.)

the foregoing requirement that the Contractor not carry or incur the expense of insurance . . . .

The insurance clause further provided that:

under the above identified policies or under this requirement the Government does not assume any risk with respect to, and will not pay for any costs of the Contractor for the inspection, repair, replacement, or renewal of any defects themselves in the vessel(s) or such materials and equipment due to (A) defective workmanship, or defective materials or equipment performed by or furnished by the Contractor or its subcontractors or, (B) workmanship, or materials or equipment performed by or furnished by the Contractor or its subcontractors which do(es) not conform to the requirements of the contract, whether or not any such defect is latent or whether or not any such non-conformance is the result of negligence;

. . . .

under the above identified policies or under this requirement the Government does not assume the risk of and will not pay for the costs of any loss, damage, liability or expense caused by, resulting from, or incurred as a consequence of delay or disruption of any type whatsoever.

. . . .

Notwithstanding the foregoing, the Contractor shall bear the first $50,000 of loss or damage from each occurrence or incident the risk of which the Government otherwise would have assumed under the requirements of this paragraph.

Under the contract, BIW was required to construct each destroyer's fuel oil fill and transfer ("FOFT") system. This system is intended to receive and distribute fuel from five topside locations on the destroyer to six groups of receiving, storage, and overflow expansion tanks. From November 9, 2000, to September 17, 2002, BIW installed, inspected, and conducted hydrostatic pressure tests on the FOFT system of one of the destroyers, known as "DDG 90." This was the first DDG BIW constructed on its "land level transfer facility" in a level position. Prior to DDG 90, BIW had constructed DDGs on inclined building ways.

After testing the FOFT system, the contract required BIW to flush the FOFT system with fuel to remove any foreign matter that might have accumulated in the

system during construction. However, on August 27, 1998, BIW amended its "Department Operating Instructions" to provide that "[t]he flushing requirements for the fill system shall be satisfied by flushing the pipe with fresh water."

On September 9, 2002, one of BIW's employees departed from both the contract specification and BIW's Department Operating Instructions and conducted a flush of the DDG 90 FOFT system using brackish water from the Kennebec River. Some of this brackish water remained in the DDG 90 FOFT piping for approximately eight months, until April and May 2003, when BIW discovered more than seventy holes that appeared to be caused by corrosion in the DDG 90 FOFT piping.

On May 23, 2003, BIW informed the Navy that it was analyzing the holes in the DDG 90 FOFT piping. On June 27, 2003, the Navy's contracting officer directed BIW to continue with the repair and replacement of the damaged piping, but explained that the direction was provided without prejudice to any of the government's rights and did not authorize any changes in the terms, conditions, delivery schedule, or price of the contract. The same day, BIW requested an equitable adjustment based upon its repairs and replacement of the FOFT piping. The contracting officer denied the claim. BIW appealed to the ASBCA.

The ASBCA applied the insurance clause of BIW's contract to the facts of this case and concluded that the "defect" in this dispute, as used in the defective/non-conforming workmanship exception to the contract's insurance clause, was the "post-hydrostatic test flush of DDG 90's FOFT piping by Kennebec River water on 9 September 2002." Initial Decision, slip op. at 19. Based on testimony from three expert witnesses, the board concluded that the brackish water flush combined with the FOFT

configuration, the accelerated sequencing of the FOFT pipe installation and flushing, and the use of the land level transfer facility to "cause[] the unforeseen, increased incidence of corrosion in DDG 90's piping." Id. at 14-15. Other factors were also mentioned by the experts as potentially contributing to the corrosion; however, the board made no findings with respect to the role played by those factors "since the experts disagreed whether [those] factors caused DDG 90's FOFT piping corrosion and [the board believed] such . . . findings [were] not necessary for the determination of liability under the Insurance clause." Id. at 15.

According to the board, "[t]he unforeseen, increased incidence of corrosion in DDG 90's FOFT piping . . . was a 'fortuitous or casualty loss' under the terms of the Insurance clause," id., and "BIW's investigation, repair[] and replacement of [the] corroded FOFT piping were not within the defective workmanship exception to the Insurance clause," id. at 21. Therefore, the board found that BIW was entitled to an equitable adjustment for all but the costs of re-performing the flush of the DDG 90 FOFT piping and awarded it damages of $1.13 million. Id. at 23. The board, however, denied BIW's request for CDA interest. Id. BIW filed a motion for reconsideration regarding various damage issues and the denial of CDA interest. In response, the board increased the damage award to $1.17 million, and remanded to the parties for a determination of whether, or to what extent, any CDA interest is due. Reconsideration Decision, slip op. at 11. The Navy appeals both the board's decision that BIW was entitled to a contract adjustment and its quantum determination. BIW cross-appeals the board's decision to remand the CDA interest determination to the parties. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

## II. DISCUSSION

### A. Standard of Review

Contract interpretation by the ASBCA is a question of law reviewed de novo by this court. Lear Siegler Servs., Inc. v. Rumsfeld, 457 F.3d 1262, 1266 (Fed. Cir. 2006). The board's factual findings, on the other hand, may only be set aside if they are: (1) fraudulent, (2) arbitrary or capricious, (3) so grossly erroneous as to necessarily imply bad faith, or (4) not supported by substantial evidence. 41 U.S.C. § 609(b); Lear Siegler Servs., 457 F.3d at 1265-66.

### B. BIW's Entitlement to an Adjustment

On appeal, the Navy argues that the ASBCA misinterpreted the contract's insurance clause to exclude from coverage only the costs BIW incurred in re-performing the flush of the DDG 90 FOFT piping. According to the Navy, the ASBCA (1) disregarded the distinction the insurance clause exclusion draws between defective/non-conforming workmanship and defects in the vessels due to such defective/non-conforming workmanship, and (2) improperly added a "fortuitous event" exception to the exclusion.

In this case, the board held that the "post-hydrostatic test flush of DDG 90's FOFT piping by Kennebec River water on 9 September 2002," was a "defect[] . . . in the vessel" as used in the defective/non-conforming workmanship exclusion to the contract's insurance clause and that "[t]he unforeseen, increased incidence of corrosion in DDG 90's FOFT piping . . . was a 'fortuitous or casualty loss' under the terms of the Insurance clause." Initial Decision, slip op. at 19.

As an initial matter, the government is correct that there is no "fortuitous or casualty" exception to the defective/non-conforming workmanship exclusion from the contract's insurance clause. The government, however, incorrectly characterizes the board's decision in the case. The board did not read such an exception into the defective/non-conforming workmanship exclusion. All-risk insurance clauses, such as that in this case, by their very nature, only apply when there has been a fortuitous or casualty loss. See Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc., 409 F.3d 342, 350 (6th Cir. 2005) ("All-risk insurance coverage . . . is a type of coverage that traditionally provides indemnification for 'fortuitous and extraneous' events."); Buczek v. Cont'l Cas. Ins. Co., 378 F.3d 284, 287 (3d Cir. 2004) ("All-risks insurance . . . generally allows recovery for all fortuitous losses, unless the policy contains a specific exclusion expressly excluding the loss from coverage."); Dow Chem. Co. v. Royal Indem. Co., 635 F.2d 379, 386 (5th Cir. 1981) ("[R]ecovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage.") By the terms of the contract, the only time a fortuitous defect in the vessel is not covered is when that defect is "due to (A) defective workmanship, materials, or equipment performed by or furnished by the Contractor or its subcontractors or, (B) workmanship, materials, or equipment performed by or furnished by the Contractor or its subcontractors that do(es) not conform to the requirements of the contract." It is incorrect to state that there is a fortuitous or casualty loss exception to the defective/non-conforming workmanship exclusion. Either the exclusion applies or it does not. Here, the board held that it did not.

The board, however, misapplied the exclusion to the facts of this case. Although the insurance clause explicitly excludes from coverage "defects themselves in the vessel" due to defective/non-conforming workmanship, the board held that the "post-hydrostatic test flush of DDG 90's FOFT piping by Kennebec River water" was such a defect. Initial Decision, slip op. at 19 (emphasis added). The post-hydrostatic test flush of the FOFT piping, however, is not a part of the vessel. Accordingly, although it may have given rise to corrosion, the flush, itself, cannot be a defect in the vessel.

Instead, the "defect in the vessel" in this case is the corroded DDG 90 FOFT piping. The only question is whether the corrosion was "due to (A) defective workmanship, or defective materials or equipment performed by or furnished by the Contractor or its subcontractors or, (B) workmanship, or materials or equipment performed by or furnished by the Contractor or its subcontractors which do(es) not conform to the requirements of the contract." If it was, the costs of inspection, repair, replacement, or renewal of the FOFT piping are properly borne by BIW and not the Navy.

Here, the board has already determined that the Kennebec River water flush of DDG 90's FOFT piping did not conform to the contract specification. See id. at 21 (describing the brackish water flush as "nonconforming" and "improper"). The question is whether the corrosion was "due to" the nonconforming flush, as required by the defective/nonconforming workmanship exclusion to the contract's insurance clause.

Although the Navy argues that the board made findings of fact sufficient for this court to hold that the corrosion in the DDF 90 FOFT piping was due to the nonconforming brackish water flush, we disagree. In fact, the board explicitly held that,

while the nonconforming flush may have contributed to the corrosion of the FOFT piping, id. at 14-15, it "was not necessarily the cause in fact or the proximate cause of the corrosion." Id. at 21. As such, we lack sufficient findings of fact to determine whether the inspection, repair, replacement, and renewal costs associated with the FOFT piping corrosion are subject to the defective/nonconforming workmanship exclusion to the contract's insurance clause. Accordingly, we vacate and remand this case to the board for further proceedings to determine whether the corrosion in the DDG 90's FOFT piping was "due to" the nonconforming flush of the piping. If it was, BIW, and not the Navy, would be liable for the costs of inspecting, repairing, replacing, and/or renewing the FOFT piping. In light of our vacatur and remand of the board's entitlement determination, the Navy's appeal of the quantum determination is, therefore, moot.

## C. BIW's Cross-Appeal Seeking CDA Interest

Lastly, BIW cross-appeals the board's decision to remand the CDA interest determination to the parties. Our jurisdiction over appeals from a decision of the ASBCA, however, is limited to final decisions. 28 U.S.C. § 1295(a)(10). Here, there has been no final decision. See Teledyne Cont'l Motors v. United States, 906 F.2d 1579, 1583 (Fed. Cir. 1990) ("A 'remand' to the parties and the contracting officer is even less final than a decision to remand to an administrative agency."). Moreover, even if we possessed jurisdiction to hear BIW's cross-appeal, our vacature of the board's decision regarding BIW's entitlement to an adjustment renders BIW's cross-appeal moot. Accordingly, we dismiss BIW's cross-appeal.

## III. CONCLUSION

Because the ASBCA incorrectly concluded that an improperly performed flush of the piping at issue was a "defect" in the vessel, as used in the contract's insurance clause, we vacate and remand the case for further proceedings and dismiss BIW's cross-appeal.

<u>VACATED-IN-PART, REMANDED-IN-PART, AND DISMISSED-IN-PART</u>