ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of - | ) | |
| | ) | |
| Marine Hydraulics International, LLC | ) | ASBCA No. 62817 |
| | ) | |
| Under Contract No. N00024-16-D-4412 | ) | |

APPEARANCE FOR THE APPELLANT:    James A. Kelley, Esq.
    James A. Kelley & Associates
    Washington, DC

APPEARANCES FOR THE GOVERNMENT:    Craig D. Jensen, Esq.
    Navy Chief Trial Attorney
    Devin A. Wolak, Esq.
    Navy Trial Attorney

    Kiley A. Holshey, Esq.
    Bradley S. Garner, Esq.
    Navy Trial Attorneys
    Norfolk, VA


OPINION BY ADMINISTRATIVE JUDGE SWEET

This appeal involves a delivery order for repair work on the USS WHIDBEY ISLAND. The delivery order included a Liability and Insurance Clause, under which the government assumed the risk of damage to the vessel, material, and equipment unless, that damage was due to the defective workmanship of the appellant Marine Hydraulics International, LLC (Marine). While performing testing, Marine left a wood-wedge in a gearcase. When the government turned the engine, pre-acceptance, to allow for other work, the gears shredded the wood-wedge into wood-debris. The government required Marine to remove the wood-debris, and refused to cover the costs of that work. Marine filed a claim, which the contracting officer denied.

On appeal of that claim, Marine argues that the government's refusal to pay the costs of removing the wood-debris violated the Liability and Insurance Clause, and constituted a constructive change. Marine moves for summary judgment on the Liability and Insurance Clause basis of the claim. The government cross-moves for summary judgment on both bases of the claim. We grant the government's motion for summary judgment—and deny Marine's motion—because there is no genuine issue of material fact but that the costs of removing the wood-debris were due to Marine's defective workmanship of leaving the wood-wedge in the gearcase.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On February 17, 2016, the United States Navy's Mid-Atlantic Regional Maintenance Center (government) awarded Marine Contract No. N00024-16-D-4412 (Contract), an indefinite delivery, indefinite quantity contract to perform complex ship repairs on amphibious vessels at Norfolk, Virginia (R4, tab 4 at 155-242). The Contract contained three relevant clauses. First, it included a Defense Federal Acquisition Regulation 252.217-7012 Clause, LIABILITY AND INSURANCE (AUG 2003). Under the Liability and Insurance Clause, the "Government assumes the risks of loss of and damage to" the vessel, material, and equipment (*id*. at 239). However, the Liability and Insurance Clause contained an exception to that government assumption of risk where the damage was "due to . . . [d]efective workmanship performed by the Contractor . . ." (the Exception) (*id*.). Second, the Contract stated that:

> If, prior to delivery, the Government finds any material or workmanship is defective or not in accordance with the job order, in addition to its rights under the Guarantees clause of the Master Agreement, the Government may reject the defective or nonconforming material or workmanship and require the Contractor to correct or replace it at the Contractor's expense.

(*Id*. at 236). Finally, the Contract incorporated by reference Federal Acquisition Regulation 52.243-1, CHANGES—FIXED PRICE (AUG 1987), which required the contracting officer to provide an equitable adjustment for any changes to the Contract (R4, tab 4 at 221; 48 C.F.R. § 52.243-1).

2. On June 15, 2017, the government issued Delivery Order N50054-17-F-L000 (Delivery Order) to Marine for repairs on the USS WHIDBEY ISLAND (R4, tab 8 at 4,822-65). The Delivery Order stated that Marine would perform repair work pursuant to Work Item 233-11-012, Number 1A Main Propulsion Diesel Engine Camshaft Bearing Inspect (*id*. at 4,841; R4, tab 6 at 317). Among other things, Work Item 233-11-012 required Marine to clean, inspect, and measure each camshaft thrust and flex drive gear (ASOUMF ¶ 13; GRASOUMF ¶ 13; R4, tab 6 at 599).[1] In order to conduct that inspection, Marine had to take "backlash measurements and readings" (ASOUMF ¶ 14; GRASOUMF ¶ 14).

---

[1] "ASOUMF" refers to the appellant's statement of undisputed material fact.
"GRASOUMF" refers to the government's response to the ASOUMF.
"GSOUMF" refers to the government's statement of undisputed material fact.

3. Between October 2017 and April 2019, Marine undertook repairs to the Number 1A Main Propulsion Diesel Engine (ASOUMF ¶ 12; GRASOUMF ¶ 12).

4. On May 11, 2019, Marine successfully took the backlash readings for the camshaft and flex drive inspection. Government representatives were present during the readings. (ASOUMF ¶¶ 15-16; GRASOUMF ¶¶ 15-16) During the readings, Marine placed a wood-wedge covered with orange tape between the gear-casing and the 105-tooth gear. That wedge pushed and held the 105-tooth gear in place so that Marine could move the 36-tooth gear and take readings. This was an industry-standard, government-accepted method of taking the readings. (ASOUMF ¶ 14; GRASOUMF ¶ 14; GSOUMF Ex. A (Hillman Decl.) ¶ 6)

5. After the testing, Marine closed the gearcase (ASOUMF ¶ 17; GRASOUMF ¶ 17). All government personnel had left before Marine closed the gearcase (GSOUMF Ex. A (Hillman Decl.) ¶ 5). Marine failed to remove the wood-wedge before closing the gearcase (ASOUMF ¶ 17; GRASOUMF ¶ 17, GSOUMF Ex. A (Hillman Decl.) ¶ 6; *id*. ex. B (Ceglio Depo.) 84-85; R4, tab 25 at 5,273).

6. During subsequent repair work, the United States Navy Ship's Force—which was responsible for operating the USS WHIDBEY ISLAND—rotated the engine (ASOUMF ¶¶ 18-20, 29; GRASOUMF ¶¶ 18-20, 29; GSOUMF Ex. A (Hillman Decl.) ¶ 8).

7. Daniel Hillman—the government's Fleet Diesel Engine Inspector— declares that to turn the engine, an operator merely pushes a button on an electric motor and that the operator would not notice resistance from the wood-wedge. Further, Mr. Hillman testified that the mechanical advantage of the gear train was enormous, given that the engine was 28 feet long, 12 feet wide, 9 feet tall, and weighed over 200,000 pounds (GSOUMF Ex. A (Hillman Decl.) ¶¶ 8, 10). According to Edmund Brisson—Marine's Diesel Division Manager—an operator turning the engine would have noticed resistance from the wood-wedge (app. mot. Ex. 9 (Brisson Decl.) ¶¶ 1, 6; app. reply Ex. 1 (Brisson Decl.) ¶ 5).

8. Mr. Hillman also declares that the Ship's Force may turn the engine without limit (GSOUMF Ex. A (Hillman Decl.) ¶ 11). Mr. Brisson declares that the Ship's Force was not authorized to turn the engine without a backlash measurement (app. mot. Ex. 9 (Brisson Decl.) at ¶ 7).

9. After turning the engine, the government determined it could not locate a copy of the backlash readings. Thus, the government decided to retake the backlash reading itself. (ASOUMF ¶ 22; GRASOUMF ¶ 22; GSOUMF Ex. A (Hillman Decl.) ¶ 9) When the government opened the gearcase to retake the backlash reading, it observed wood-debris and orange tape in the gearbox (ASOUMF ¶ 24; GRASOUMF ¶ 24).

Mr. Hillman declares that "[b]ased upon where the debris was found, the wedge that [Marine] left in the [gear] must have come loose and passed through the gear train between the 105 tooth gear and the idler" (GSOUMF Ex. A (Hillman Decl.) ¶ 6). There is no contradictory evidence.

10. The government directed Marine to perform a complete lube oil flush of the engine, remove the contamination from the gear-train by mechanically cleaning the gear-train and gearcase, and replace the lube oil filters and oil. Marine performed the work. The government did not compensate Marine for that work. (ASOUMF ¶¶ 27, 31-32; GRASOUMF ¶¶ 27, 31-32; R4, tab 23 at 5,267)

11. On November 25, 2020, Marine submitted a certified claim (ASOUMF ¶ 2; GRASOUMF ¶ 2).

12. On January 15, 2021, the contracting officer issued a final decision denying the claim (ASOUMF ¶ 3; GRASOUMF ¶ 3).

13. This appeal followed.

DECISION

The government is entitled to judgment as a matter of law on Marine's claims based upon the Liability and Insurance Clause and a purported constructive change.

I.      Summary Judgment Standard

We will grant summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, we draw all reasonable inferences in favor of the non-movant. *Id*. A genuine issue of material fact arises when the non-movant presents sufficient evidence upon which a reasonable fact-finder, drawing the requisite inferences and applying the applicable evidentiary standard, could decide the issue in favor of the non-movant. *C Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993).

II.      Liability and Insurance Clause

There is no genuine issue of material fact suggesting that the government breached the Liability and Insurance Clause.  The elements of a breach of contract claim are:  (1) a valid contract between the parties; (2) an obligation or duty on the part of the government arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.  *Lockheed Martin Integrated Sys., Inc.*, ASBCA Nos. 59508, 59509, 17-1 BCA ¶ 36,597 at 178,284.  Our analysis of the obligations and duties of the parties requires us to interpret the contract.  In interpreting a contract, "clear and unambiguous [contract provisions] must be given their plain and ordinary meaning[.]"  *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1040 (Fed. Cir. 2003) (*en banc*).  "An ambiguity exists when a contract is susceptible to more than one reasonable interpretation."  *E.L. Hamm & Assoc., Inc. v. England*, 379 F.3d 1334, 1342 (Fed. Cir. 2004).[2]  "[T]he language of a contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances."  *Hol-Gar Mfg. Corp. v. United States*, 351 F.2d 972, 975 (Ct. Cl. 1965).

The Liability and Insurance Clause—which Marine claims the government breached (app. reply at 2)—stated that the "Government assumes the risks of loss of and damage to" the vessel, materials, or equipment, except for loss and damage "due to . . . [d]efective workmanship performed by the Contractor" (SOF ¶ 1).  The term "due to" in insurance clauses such as the one at issue here means the cause-in-fact and proximate cause.  *Winter v. Bath Iron Works Corp.*, 503 F.3d 1346, 1351 (Fed. Cir. 2007), *on remand* ASBCA No. 54544, 08-2 BCA ¶ 33,936 at 167,935, *recon. denied* 09-1 BCA ¶ 34,085.  Cause-in-fact, or actual cause, means that an act or omission is the but for cause of a result.  Proximate cause means a sufficiently close connection between the act or omission and the result to impose legal responsibility for the result.  *Carter v. McDonough*, 46 F.4th 1356, 1356-61 (Fed. Cir. 2022); *Ollis v. Shulkin*, 857 F.3d 1338, 1343-44 (Fed. Cir. 2017).

Here, there is no genuine issue of material fact but that the wood-debris damage[3] to the vessel, materials, or equipment was due to Marine's defective

---

[2] Because the claims in this appeal ultimately are government claims that Marine's performance was deficient, it is the government's burden of proof on each claim.  *Mitchell Enters.*, ASBCA No. 53202 *et al.*, 06-1 BCA ¶ 33,277 at 164,962.

[3]  In the alternative, the government argues that it did not breach the Liability and Insurance Clause because that clause only applies to loss or damage and there is no genuine issue of material fact suggesting that there was loss or damage since the cleaning does not count as such (gov't mot. 5-6).  Though we are skeptical of this argument, and it appears to us that there is likely a genuine issue of

5

workmanship because it is undisputable that Marine's failure to remove the wood-wedge was the cause-in-fact and proximate cause of the wood-debris damage. There is no genuine issue of material fact but that, but for Marine's failure to remove the wood-wedge from the gearcase, the gears would not have shredded the wood-wedge into the wood-debris that damaged the vessel, materials, or equipment. Moreover, given the close causal connection between Marine leaving the wood-wedge in the gearcase and the gears shredding the wood-wedge to the damaging wood-debris, there is no genuine issue of material fact but that there was a sufficiently close connection to impose legal responsibility for the wood-debris damage on Marine. (SOF ¶¶ 5-6, 9); *see also Lake Union Drydock Co.*, DOTCAB No. 73-39, 75-1 BCA ¶ 11,134 (DOT BCA) (holding that a contractor's leaving a rag in an engine turbine caused damage to the turbine, entitling the government to charge the contractor for the costs incurred repairing that damage).

Marine argues that the government caused the wood-debris damage for three reasons. First, Marine argues that government personnel observing the initial backlash measurement did not discover that Marine failed to remove the wood-wedge from the gearcase (app. mot. at 12). However, Marine has failed to raise a genuine issue of material fact suggesting that the government observers were present when Marine closed the gearcase (SOF ¶ 5). In any event, "[w]here the contract places on the contractor the burden of compliance, the presence or absence of a Government inspector does not shift responsibility for the sufficiency of the work from the appellant to the government." *CBRE Heery, Inc.*, ASBCA No. 62420, 21-1 BCA ¶ 37,927 at 184,200 (quoting *Panhandle Grading & Paving, Inc.*, ASBCA No. 38539, 90-1 BCA ¶ 22,561 at 113,225).[4] Here, it was Marine's responsibility to carry out the testing in a workmanlike manner (SOF ¶¶ 1-2). Therefore, even if the government

material fact as to whether at least some of the work directed by the government—such as replacing the lube oil filters and oil -- constituted repairing damage to the vessel, materials, or equipment, we do not decide it today.

[4] Marine relies upon *Lake Union*, 75-1 BCA ¶ 11,134 (DOT BCA) to argue that the government is responsible for pre-acceptance damage caused by a contractor's defective workmanship if the government failed to detect that defective workmanship (app. reply at 4). However, *Lake Union* merely held that the government detected a contractor's defective workmanship. 75-1 BCA ¶ 11,134. It did not hold that a failure to detect a contractor's defective workmanship shifts responsibility for pre-acceptance damage caused by that defect to the government. *Id*. Even if it had, *Lake Union Drydock*, being from a different Board of Contract Appeals, is not binding upon this Board, and we would have to decline to follow it to the extent it was inconsistent with *CBRE Heery* and *Panhandle Grading & Paving*.

6

observers had witnessed Marine leaving the wood-wedge in the gearcase, that would not shift responsibility to the government for Marine's failure to remove the wood-wedge.

Second, Marine argues that the government caused the wood-debris damage because it failed to take backlash measurements—which would have revealed the wood-wedge—before turning the engine (app. mot. at 12-13). However, there is no dispute that it was Marine's responsibility to take the backlash measurement, and Marine had taken backlash measurements before the government turned the engine (indeed, it was Marine's performance of this backlash measurement, in which it left the wood-wedge in the gearcase, that led to the damage in the first place) (SOF ¶¶ 2, 4, 6). In any event, "[i]nspections are for the benefit of [the government], not the contractor, and the failure of [the government] to provide for an inspection does not relieve the contractor of its responsibilities under the contract." *Penguin Indus., Inc. v. United States*, 530 F.2d 934, 936-37 (Ct. Cl. 1976). As a result, the government's failure to take a backlash measurement before turning the engine did not relieve Marine of its responsibility to perform the backlash measurement in a workmanlike manner.

Finally, Marine argues that the government caused the wood-debris damage because the wood-wedge would not have been shredded if the government had stopped turning the engine upon encountering resistance (app. mot. at 12-13). Even assuming without deciding that Mr. Brisson's declaration raises a genuine issue of material fact as to whether the government could have avoided the wood-debris damage if it had stopped the engine turning once it encountered resistance, that would not raise a genuine issue of material fact suggesting that the Exception did not apply. Where a contractor's defective workmanship is a proximate cause of damage to a vessel, materials, or equipment, that damage is due to the defective workmanship—and thus exceptions to insurance clauses like the Exception apply—even if another cause contributed to the damage, at least when the other cause is not intervening and independent of the defective workmanship. *Bath Iron Works*, 09-1 BCA ¶ 34,085 at 168,521 (holding that damage was due to defective workmanship—and thus fell within an insurance clause exception—when the contractor improperly flushed piping, even though the high levels of chlorides, sediment, and microbes in the water contributed to the damage, because the high levels of chlorides, sediment, and microbes in the water were not an intervening and independent cause).[5] Here, there is

---

[5] Because we conclude that the failure to stop the engine was not an independent cause, we decline to reach the issue left open by *Bath Iron Works* of whether the damage is due to defective workmanship where defective workmanship is a proximate cause and there is an intervening and independent converging cause. 09-1 BCA ¶ 34,085 at 168,521; *see also Burlington N., Inc.*, ASBCA

no genuine issue of material fact suggesting that the government's failure to stop turning the engine caused the wood-wedge shredding, independent of Marine's defective workmanship of leaving the wood-wedge in the gear case. On the contrary, just as the exposure of the pipes to water with the high levels of chlorides, sediment, and microbes in *Bath Iron Works* depended upon the contractor improperly flushed piping, 09-1 BCA ¶ 34,085 at 168,521, the government's failure to stop turning the engine shredding the wood-wedge depended upon Marine's defective workmanship of leaving the wood-wedge in the gearcase in the first place (SOF ¶¶ 5-7). Because the government's failure to stop turning the engine was not a cause of the wood-wedge shredding damage independent of the defective workmanship, the wood-wedge damage was due to the defective workmanship, regardless of whether the government's failure to stop turning the engine also caused the damage.

III.     Constructive Change

There is no genuine issue of material fact suggesting that the government constructively changed the contract either. There is a constructive change when: (1) an official compels a contractor to perform work not required under the terms of the contract; (2) the official directing the change had contractual authority to alter the contractor's duties unilaterally; (3) the official enlarged the contractor's performance requirements; and (4) the added work was not volunteered, but resulted from the official's direction. *Alfair Dev. Co.*, ASBCA Nos. 53119, 53120, 05-2 BCA ¶ 32,990 at 163,515.

Here, there is no genuine issue of material fact suggesting that an official compelled Marine to perform work not required under the terms of the contract or enlarged Marine's performance requirements. The Contract stated that:

> If, prior to delivery, the Government finds any material or workmanship is defective or not in accordance with the job order, in addition to its rights under the Guarantees clause of the Master Agreement, the Government may reject the defective or nonconforming material or workmanship and require the Contractor to correct or replace it at the Contractor's expense.

(SOF ¶ 1). As discussed in greater detail above, there is no genuine issue of material fact but that Marine's workmanship was defective because it is undisputed that Marine left the wood-wedge in the gearcase (SOF ¶ 5). Therefore, there is no genuine issue of

---

No. 19262, 75-2 BCA ¶ 11,526 (recognizing that there may be multiple proximate causes of a result).

8

material fact but that the Contract permitted the government to require Marine to correct the defect by removing the wood-debris at Marine's expense pre-delivery.

CONCLUSION

For the foregoing reasons, we grant the government's motion for summary judgment and deny Marine's motion for summary judgment. This appeal is denied.

Dated: April 16, 2024

JAMES R. SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62817, Appeal of Marine Hydraulics International, LLC, rendered in conformance with the Board's Charter.

Dated: April 16, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals